THOMAS G. SKELTON v. THE FENTON ELECTRIC LIGHT & POWER COMPANY.

*Negligence—Pleading—Evidence –Error without prejudice — Independent contractor.*

1. The declaration, in a suit by the owner of a marble shop for injury to certain monuments standing in his yard, alleged that the injury was caused by the gathering upon the smokestack, which the defendant had caused to be erected on its. premises for use in connection with an electric lighting apparatus, and the iron guys which supported said smokestack, of large quantities of iron rust, or carbonate of iron, which became naturally mixed with water and ice, smoke, soot, creosote, impure water, acids, and other ingredients or substances naturally collecting on said smokestack and guys, which mixture was naturally by the wind blown upon the monuments. And it is held that the declaration apprised the defendant that the injury was suffered by the blowing of rust, soot, and other formations upon, or products of, defendant's chimney, in a moistened condition, upon the monuments, and that plaintiff was not required to ascertain at his peril just what the constituent elements of the mixture were.

2. In a suit by the owner of a marble shop to recover damages for injury to monuments, which he had left out of doors, by the blowing thereon of soot and other substances from the defendant's premises, the admission of evidence of a custom among marble dealers to leave their work thus exposed is non-prejudicial error, as the plaintiff had the legal right to leave his monuments out of doors if he chose.

3. Where, in such a case, a witness for the plaintiff has testified on cross-examination that stains upon marble penetrate deeper by time, the rejection of the further question as to when he would do work upon marble that was stained,—at once, or after waiting a year,—is not prejudicial to the defendant, as the former testimony amounted to saying that the stains should have early treatment.

4. It was competent for a witness who was a builder to state what is meant among mechanics when the term "smokestack" is used.

5. The fact that the smokestack was erected upon the order of the defendant by an independent contractor, and that it had not been accepted at the time of the alleged injury to the monuments, will not relieve the defendant from liability, it appearing that proper material was used by the contractor, and it not being shown that the injury resulted from the negligence or fault of the contractor, but it appearing rather that it was the natural result of erecting a smokestack of iron at that place.

6. A witness called by the defendant to show that carbonate of iron would not stain marble was asked on cross-examination if he had not seen soot and creosote coming out of the electric light works chimney in large quantities, and if he had not so told a certain person, both of which questions were answered in the negative; whereupon the person referred to was called on rebuttal, and, against the defendant's objection, permitted to testify that from a conversation had with the witness he got the impression that the witness meant that he had seen some substance come from said chimney. No foundation for an impeachment of the witness had been laid. And it is held that the testimony was hearsay, and well calculated to corroborate the plaintiff's claim that something came from said chimney to his injury, and that its admission was reversible error.


Error to Genesee.   (Newton, J.)   Submitted on briefs March 9, 1894.   Decided April 10, 1894.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Tinker v. Frackelton,* for appellant.

*Wisner, Lee & Aitken,* for plaintiff.

HOOKER, J.  The plaintiff's action is based upon an alleged injury to certain marble monuments which, at the time of such injury, stood in the yard adjoining his marble shop in the village of Fenton. At the time, the defendant owned adjoining premises, upon which it had erected buildings for an electric lighting apparatus, which had been put up for it under a contract by the Western Electric Company, but which had not been accepted by defendant. An iron smokestack extended for upwards of 75 feet above the roof, at a distance of 14 feet from the line of plaintiff's premises, which was supported by iron guys, one of which crossed plaintiff's premises several feet above the ground.

Plaintiff's declaration alleged that his monuments were injured by the gathering upon the smokestack and guys of large quantities of "iron rust, or carbonate of iron, which became naturally mixed with water and ice, smoke, soot, creosote, impure water, acids, and other ingredients or substances naturally collecting on said smokestack and guys, and the said mixture was naturally by the wind blown upon said monuments," etc. The declaration also averred that the smokestack and guys were a private nuisance, and asked a judgment that they were such, and that they be abated under chapter 273 of Howell's Statutes.

Defendant's counsel objected to the introduction of any proof under the declaration, because of the use of the words, "or other ingredients or substances," which are said to render the declaration uncertain. A reference to the declaration shows that the conjunctive appears therein, and not the disjunctive, as in the objection. We think the declara-

tion apprised defendant that the injury was suffered by the blowing of rust, soot, and other formations upon, or products of, its chimney, in a moistened condition, upon these monuments, and that plaintiff was not required to ascertain at his peril just what the constituent elements of the mixture were.

The plaintiff offered testimony to show that it was the custom of marble dealers to leave their work out of doors. This testimony was inadmissible. While it was proper to show the necessity, the custom could not limit the rights of the defendant. But, as the plaintiff had a legal right to leave his monuments out of doors if he chose, the defendant suffered no injury by the introduction of such evidence.

The testimony complained of by the eighth assignment was also harmless.

On cross-examination, plaintiff's witness Barney was asked when he would do work upon marble that was stained,—at once, or after waiting a year? An objection was sustained. The witness had already stated that stains penetrate deeper by time, which was substantially saying that they should have early treatment. We think the defendant was not injured by this ruling.

We think also that the witness McCarthy, who was a builder, was competent to state what is meant among mechanics when the term "smokestack" is used.

A question was raised over the danger of the smokestack being blown down. This testimony was perhaps proper upon the question of the nuisance, but, if it were not, it had no significance, as it had not blown down.

The defendant sought to show that it had not accepted the works from the Western Electric Company at the time the injury occurred. The Western Electric Company contracted to erect a stack. But this stack was ordered by the defendant to be erected. So far as we discover, the

material furnished was proper, and in accordance with the contract. There is nothing to show that the injury resulted from the negligence òr fault of the builders of the stack, but it would seem that it was the natural result of erecting a smokestack of iron at that place. The defendant cannot say that it was the fault of the Western Electric Company, for it was what it was hired to do. If there was any fault about it, it was in causing the erection of the stack, for which the defendant is responsible. Had it been shown that the Western Electric Company, through negligence in its methods of erection or operation of the electric plant, without fault of the defendant, caused the injury, this evidence might have been material. But the claim of the plaintiff is that rust from the chimney and guys fell or was blown upon his monuments, and for this the defendant is as much responsible as the agent who erected these appliances by its command.

One Plumb, a druggist, was called by defendant to show that carbonate of iron would not stain marble. On cross-examination he was asked if he had not seen soot and creosote coming out of the electric light works chimney in large quantities, and if he had not so told one J. W. Kennedy, to both of which he answered, "No." Mr. Kennedy was called upon rebuttal, and, against defendant's objection, was permitted to testify that from a conversation with Plumb he got the impression that he meant that he had seen some substance come from that chimney. This testimony was hearsay. No foundation for an impeachment of Plumb was laid, and the testimony should not have been admitted. It was well adapted to corroborate the plaintiff's claim that something came from that chimney to his injury. Counsel try to break the force of this by saying that it was offered upon the subject of abatement of the nuisance, and, as that was decided in defendant's favor, the testimony did not injure it. Hear-

say was no more admissible for one purpose than another, and, in this instance, was plainly injurious.

For this error the judgment must be reversed, and a new trial ordered.

The other Justices concurred.